IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Clifford Baker, #317850, )
) Civil Action No. 6:10-298-MBS-KFM
Petitioner, )
) **REPORT OF MAGISTRATE JUDGE**
vs. )
)
Leroy Cartledge, )
)
Respondents. )

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND OF THE CASE**

The record reveals that the petitioner is currently incarcerated at the McCormick Correctional Facility of the South Carolina Department of Corrections pursuant to Orders of Commitment of the Clerk of Court for Oconee County. The petitioner was arrested on October 16, 2004, and charged with the murder of a four-year-old child. He was indicted at the December 2004 term of the Oconee County Grand Jury for murder (04-GS-37-2037). The State sought the death penalty against the petitioner. Attorneys Derek Enderlin and Symmes Culbertson were appointed to represent the petitioner.[1] On October 2, 2006, the petitioner pleaded guilty to murder before the Honorable John C. Few,

---

[1] South Carolina law provides for the appointment of two attorneys in a murder case where the State is seeking the death penalty against an indigent defendant.

then a state Circuit Court Judge. In exchange for the petitioner pleading guilty to murder and receiving a sentence of life in prison without parole, the State agreed to with withdraw its intent to seek the death penalty against him. After accepting the petitioner's guilty plea to murder, Judge Few sentenced him to life in prison without the possibility of parole (App. pp. 1-43). The petitioner did not appeal his conviction or sentence.

***Underlying Facts***

On October 16, 2004, the petitioner murdered four-year-old Billy Nathaniel Henry, Jr., by striking the victim in the head (App. 19-23). The child suffered a traumatic brain injury, was flown to Greenville Memorial Hospital, and died there as a result of that injury (App. 21). However, the injuries to the head and brain were not the only injuries to the child. The autopsy showed the child had numerous injuries to his body, including to his chest, shoulders, both forearms, abdomen, back, ribs, thigh, foot, legs, scrotum, and penis (App. 21). The victim also had contusions on his skull, diffuse edema, and subdural hematoma in the brain (App. 21). Trauma to the inner organs included the bowel, edema to the pancreas, and mesentery. The cause of death was determined to be homicide from blunt force trauma with resulting cerebral injuries (App. 21). Billy's six-year-old brother, Jacob, was also at home when Billy was assaulted (App. 20).[2]

The petitioner was the boyfriend of the children's mother and had been left alone at home with the children when the mother went to work. Jacob told authorities that after his mother left for work, the petitioner entered the boys' room and began whipping them with a belt. Jacob stated that the petitioner took Billy into the bathroom and put him in a tub full of water. Jacob heard his brother say "the water was cold" (App. p. 22). Jacob

---

[2]The record shows the driving reason behind the State's willingness to drop its intention to seek the death penalty and allow the petitioner to plead guilty to murder and a sentence of life without parole was based on concerns for the six-year-old victim if he was forced to testify at the petitioner's capital trial (App. 3-4).

2

also reported when Billy came out of the bathroom he was sleeping. Jacob also reported that the petitioner had punched Billy on the back and stomach. It was also determined that Billy had puncture wounds to the bottom or sole of his left foot.[3]

The victim's mother and the petitioner had an altercation the night before the murder occurred. The day of the murder, the victim's mother told a friend about the altercation, and the friend suggested that the victim have an officer escort her home from work. The victim followed this advice, and when she arrived home with deputies, the deputies found Billy lying on a mattress in the back bedroom. The deputies observed bruising and marks on Billy's head, back, and face, and blood was coming from his nose. The child made a gurgling noise when approached by deputies. The deputies also noticed marks and bruises on the older child, Jacob, who stated the petitioner hit him (App. 20-21).

The petitioner was present when the deputies and the mother arrived at the home (App. 20). When the petitioner was interviewed by police, he admitted that he and the two children were the only ones present in the home on the day in question. The petitioner offered alternative explanations for the child's injuries but they were wholly inconsistent with the medical findings (App. 22). At his guilty plea, the petitioner eventually admitted that he did what was alleged in the indictment, that he murdered the victim (App. 35-43).

*The PCR Action*

The petitioner filed an application for post-conviction relief ("PCR") (2007-CP-37-339) on April 13, 2007. The respondent filed a Return dated June 14, 2007. In the application, the petitioner alleged he was being held unlawfully for the following reason:

---

[3]Under South Carolina law, it is an aggravating circumstance to the crime of murder that the defendant murdered a child under the age of 11 years old or that the victim was tortured. *See* S.C. Code Ann. § 16-3-20.

3

(1) Ineffective assistance of counsel.

The petitioner filed an amended PCR application on November 7, 2007. In the amended application, the petitioner alleged he was being held unlawfully due to:

(1) Ineffective assistance of counsel.

On November 13, 2007, a hearing into the matter was convened before the Honorable John C. Hayes, Circuit Court Judge ("the PCR court"). The petitioner was represented at the hearing by his collateral counsel, Cheryl Truesdale. The State was represented by Daniel E. Grigg, Assistant Attorney General. At the hearing, the petitioner testified in his own behalf. The State called as witnesses the petitioner's two appointed trial/plea attorneys, Mr. Culbertson and Mr. Enderlin. In an Order filed November 21, 2007, the PCR court denied and dismissed the petitioner's application for post-conviction relief with prejudice.

In the Order of Dismissal, the PCR court noted that in a PCR action, the applicant bears the burden of proving the allegations in their application (App. 110 (citing *Butler v. State*, 334 S.E.2d 813 (S.C. 1985)). Where the application alleges ineffective assistance of counsel as a ground for relief, the court pointed out that the petitioner must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result" (App. 110 (quoting *Strickland v. Washington*, 466 U.S. 668, (1984) and citing *Butler*, 334 S.E.2d 813)). The PCR court noted the proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The PCR court noted that courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment (App. 111 (citing *Strickland*, 466 U.S. 668)). The court pointed out that the petitioner must overcome this presumption to receive relief (App. 111 (citing *Cherry v. State*, 386 S.E.2d 624 (S.C. 1989)). The PCR court also pointed out the reviewing court applies a two pronged test in evaluating

4

allegations of ineffective assistance of plea counsel. First, the petitioner must prove that counsel's performance was deficient. Under this prong, the court measures attorney's performance by its "reasonableness under professional norms." Second, counsel's deficient performance must have prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (App. 111 (quoting *Cherry*, 386 S.E.2d at 625)). With respect to guilty plea counsel, the court pointed out that the petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial (App. 111 (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)).

The PCR court noted that the petitioner testified that his counsel failed to investigate his case. The court found this was belied by the testimony of plea counsel. The court pointed out this was a death penalty case, and both plea counsel testified extensively as to their investigation and preparation.

The PCR court also noted that the petitioner claimed that counsel failed to talk to witnesses. The PCR court found this claim was belied by the testimony of his plea counsel. Additionally, the court pointed out, the petitioner presented no evidence in support of this claim at his PCR hearing. The court pointed out that a post-conviction applicant must present witnesses he claims should have been called on his behalf (App. 111 (citing *Bannister v. State*, 509 S.E.2d 807 (S.C. 1998)).

The PCR court also noted that the petitioner claimed that his plea counsel "hardly came to talk" to him. The court found this claim was belied by the testimony of his plea counsel. The court pointed out that plea ounsel testified that they, along with investigators, mitigation experts, psychologists and psychiatrists talked to the petitioner numerous times.

The PCR court also noted that the petitioner claimed he was not given copies of the discovery materials. The court found this assertion was true. However, the court

5

pointed out that plea counsel testified they did not want the discovery material to be subject to access by other inmates. The PCR court found this was a proper strategy (App. 112 (citing *Cherry*, 386 S.E.2d at 625)). Additionally, the PCR court found that the petitioner presented no evidence that his lack of copies of the discovery material prejudiced him in any way.

The PCR court also noted that the petitioner claimed plea counsel "pushed" him into pleading guilty and used his mother to assist in this endeavor. The PCR court found plea counsel did recommend the petitioner plead guilty as opposed to facing the death penalty at trial. The court found this likely worked to the petitioner's benefit, not to his detriment. The PCR court pointed out that plea counsel described the victim's death as horrific. The court noted that the petitioner surmised that his plea counsel did not tell him he could have pled to something other than murder. The PCR court found there was no evidence to support this contention. The PCR court found the petitioner had failed to carry his burden of proof. The PCR court found he had failed to prove his plea counsel were ineffective in any way. As a result, the petitioner's application for PCR was dismissed with prejudice. The petitioner was advised that he had 30 days to seek certiorari from the South Carolina Supreme Court (App. 112).

The petitioner appealed the denial of post-conviction relief to the South Carolina Supreme Court by way of a Petition for Writ of Certiorari. The petitioner raised only one issue in his Petition for Writ of Certiorari:

> The PCR Court erred in failing to find trial counsel ineffective for not insuring that petitioner's guilty plea to murder was voluntarily and knowingly entered when Petitioner advised the court that he did not cause the child victim to die, effectively claiming he was not guilty. The plea was not entered pursuant to *Alford* or a plea of *nolo contendre*.

6

(*See* Pet. for Writ of Cert. at 2).[4]  The State filed a Return to the Petition for Writ of Certiorari.  The appeal was transferred to the South Carolina Court of Appeals.[5]  On December 10, 2009, the South Carolina Court of Appeals denied the Petition for Writ of Certiorari.  The petitioner did not appeal to the South Carolina Supreme Court.  The Remittitur was issued December 30, 2009.

In his *pro se* petition now before this court, the petitioner makes the following allegation:

> Ground one:  Ineffective Assistance of Counsel (Rendered Plea Involuntary)
>
> Supporting Facts: (Please see attached Petition for Writ of Ceritorari) Petitioner hereby raises the issue of ineffective assistance of counsel as set forth by the Petitioner for Writ of Certiorari filed by Lannelle C. Durant and Incorporates the same herein as his habeas corpus issue.

On April 14, 2010, the respondent filed a motion for summary judgment.  By order filed April 15, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The petitioner filed his opposition to the motion for summary judgment on May 20, 2010.

## **APPLICABLE LAW AND ANALYSIS**

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court

---

[4]This issue was not addressed in the PCR court's Order of Dismissal, and the petitioner did not file a Rule 59 motion to have this specific issue addressed in the PCR court's Order of Dismissal. In its responsive brief on appeal, the State did not assert this issue was procedurally barred.

[5]Apparently, the appeal was mistakenly filed in the Court of Appeals, forwarded to the Supreme Court, and then remanded back to the Court of Appeals.

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective

8

assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

The petitioner's sole federal habeas ground is the same ground he raised to the South Carolina Court of Appeals in the appeal from the denial of his PCR application:

> The PCR Court erred in failing to find trial counsel ineffective for not insuring that petitioner's guilty plea to murder was voluntarily and knowingly entered when Petitioner advised the court that he did not cause the child victim to die, effectively claiming he was not guilty. The plea was not entered pursuant to *Alford* or a plea of *nolo contendre*.

(Petition at p. 6). As noted by the respondent, this issue was not specifically addressed in the PCR court's Order of Dismissal, and the petitioner did not file a Rule 59 motion to have the issue addressed (resp. m.s.j. at 7 n.5). On appeal, however, the respondent did not assert that the issue was not preserved for appellate review in its Return to the Petition for Certiorari. Further, the Court of Appeals did not address the issue on the merits (*see* Order denying Pet. for Writ of Cert.). Accordingly, as the state court has not adjudicated on the merits the specific claim raised by the petitioner, it appears to this court that the standard of review "of questions of law and mixed questions of law and fact is *de novo*" rather than the deferential standard of review urged by the respondent. *See Weeks*, 176 F.3d at 258. However, even under a *de novo* standard of review, the petitioner's ground for relief fails.

The record shows that the petitioner freely, voluntarily, and with complete understanding, entered a plea of guilty to the charges against him. To find a guilty plea is voluntarily and knowingly entered into, the record must establish a defendant had full understanding of the consequences of his plea and the charges against him. *Boykin v. Alabama*, 395 U.S. 238 (1969). In *Boykin*, the United States Supreme Court held that before a court can accept a plea, a criminal defendant must be advised of the constitutional rights he is waiving. *Id.* at 243. Specifically, the accused must be aware of the privilege

9

against self-incrimination, the right to a jury trial, and the right to confront one's accusers. *Id.* Moreover, a criminal "defendant entering a guilty plea must be aware of the nature and crucial elements of the offense, the maximum and any mandatory minimum penalty, and the nature of the constitutional rights being waived." *Pittman v. State*, 524 S.E.2d 623, 624 (S.C. 1999). A criminal defendant's knowing and voluntary waiver of statutory or constitutional rights in a guilty plea must be established by a complete record and "'may be accomplished by colloquy between the court and defendant, between the court and defendant's counsel, or both.'" *Roddy v. State*, 528 S.E.2d 418, 421 (S.C. 2000) (quoting *State v. Ray*, 427 S.E.2d 171, 174 (S.C. 1993)).

The record fully supports a finding that the petitioner's guilty plea was freely, voluntarily, and knowingly entered. During the course of his testimony at the PCR hearing, the petitioner informed the PCR court that the plea judge stopped his plea due to concerns as to whether or not the petitioner was admitting that he was guilty of murder. The petitioner stated that he and his attorneys met for approximately one hour, and then the plea was reconvened. At the plea, the petitioner's counsel stated:

> Mr. Baker would like to go ahead with his plea. He understands what some of the confusion was about. He understands what he's here today to do is admit to this court . . . that he intentionally caused injury to Billy Henry, Junior; that there was malice involved in that intent to cause injury to Billy Henry, Junior; and the injuries he did cause to Billy, Junior, directly led to the death of that child.

(App. 35). Judge Few asked the petitioner if what his attorney said was true, and the petitioner replied, "Yes, sir" (App. 35). The petitioner thereafter admitted on the record that he did commit the murder of the victim as alleged in the indictment (App. 35-36). The petitioner also stated on the record under oath that his attorneys did not coerce him into making this admission, and his admission to the crime was freely and voluntarily made (App. 36-38). The petitioner also told the plea judge that his lawyers did not do anything

10

that pressured him to go forward with the plea and that the decision to go forward with the plea was his (App. 37). The petitioner testified at the PCR hearing that he told the plea court that he was responsible for the victim's death (App. 74). Furthermore, the petitioner acknowledged that the plea court had fully informed him of his constitutional rights (App. 77). The petitioner also acknowledged that he, in fact, told the plea court that he was guilty of the crime with which he had been charged (App. 77-78). After the recess that was taken to allow the petitioner an opportunity to speak with counsel, the plea judge re-read the indictment on the record. At that time, the petitioner told the plea court that he did what the indictment said he did (App. 79). Finally, the petitioner informed the plea court and reiterated for the PCR court that the decision to plead guilty was his (App. 80). The plea court confirmed the petitioner was aware of the nature and crucial elements of the offense, the maximum and mandatory minimum penalty, and the nature of the constitutional rights being waived by pleading guilty (App. 5-12).

Plea counsel testified at the PCR hearing that the petitioner informed him on more than one occasion that he did not want to go to trial (App. 87-88). Plea counsel further informed the PCR court that the petitioner had been made aware on numerous occasions that he had two options: (1) to go to trial at the risk of receiving the death penalty, or (2) plead guilty and receive a sentence of life without parole (App. 88). One of the petitioner's attorneys testified that after the plea judge initially refused to accept the plea and they conferred, the petitioner admitted he struck the child (App. 105). Finally, counsel testified that he and co-counsel encouraged the petitioner to accept the plea, but never forced him to do so (App. 88). Both of the petitioner's attorneys testified the decision to plead guilty was the petitioner's, and it was freely and voluntarily made by the petitioner (App. 88, 104). The transcript of the plea proceeding and the PCR hearing shows the petitioner, upon the advice of his attorneys, made a free and knowing decision to enter a guilty plea.

11

The petitioner has not shown anything which would overcome the "strong presumption of veracity" carried by his statements at the guilty plea hearing of a voluntary decision to plead. *See United States v. Morrow*, 914 F.2d 608, 614 (4th Cir. 1990). Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents reasons why he should be allowed to depart from the truth of his statements. *Edmonds v. Lewis*, 546 F.2d 566, 568 (4th Cir. 1976). The petitioner has not done so.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689. With respect to guilty plea counsel, in order to satisfy the prejudice requirement, a petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The petitioner cannot show deficient performance under *Hill v. Lockhart*. Counsel acted reasonably in advising the petitioner to plead guilty to avoid the death penalty. The evidence of the petitioner's guilt of murder was overwhelming, and the evidence of statutory aggravating circumstances was overwhelming. The victim was a four-year-old child who was subjected to an aggravated battery. Counsel did not act unreasonably in not moving to set aside the plea where, after consulting with the petitioner, the petitioner then freely admitted he wanted to plead guilty and admitted on the record he murdered the victim (*see* App. 34-38, 43, 105). The petitioner specifically admitted to his counsel that he hit the child with malice (App. 105). Furthermore, it was in the petitioner's best interest to plead guilty and avoid the death penalty. As counsel stated at the PCR hearing, the most the petitioner could hope for at trial, given the facts and evidence in this case, was a sentence of life without parole (App. 103). The petitioner very well could have received the death penalty at trial. *See State v. Passaro*, 567 S.E.2d 862, 868 (S.C. 2002) (death penalty for murder of a child under eleven upheld); *State v. Wilson*, 413 S.E.2d 19, 27-28 (S.C. 1992) (death penalty for murder of two eight-year-old children upheld); *State v. Rosemond*, 518 S.E.2d 588, 590 (S.C. 1999)(death penalty affirmed for murder of girlfriend and her ten-year-old daughter). Counsel acted well within the standard of care in proceeding with the guilty plea that avoided a sentence of death where the petitioner stated he was guilty of the offense stated in the indictment (App. 35-38).

The petitioner also cannot show prejudice under *Hill v. Lockhart*. The petitioner has failed to show there is a reasonable probability that he would not have pleaded guilty and would have proceeded to trial. Again, the evidence of the petitioner's guilt was overwhelming (App. 100-101). The petitioner was alone with the two children all day while the mother was at work. The petitioner admitted to police that he was the only adult with the children while their mother was at work. The petitioner gave false alternative explanations to the police about why the small child was beaten and battered that were not

13

consistent with the medical findings. The deceased child's older brother identified the petitioner as the perpetrator of the assault on his little brother and described the assault in some detail. Police found the small child beaten, battered, and bruised in the custody of the petitioner, and the petitioner was doing nothing to assist or help the child. The mother could fully account for her whereabouts during the pertinent time period. As plea counsel stated at the PCR hearing, the more they investigated the case, the worse the case became (App. 99).

Additionally, the State had served the petitioner with a Notice of Intent to Seek the Death Penalty and was proceeding to trial. Aggravated murder in South Carolina carries a penalty of either death or the imposition of life imprisonment without parole. S.C. Code Ann. § 16-3-20. The State could prove one aggravating circumstance supporting the imposition of the death penalty by simply proving the petitioner committed the murder of the victim. *See* S.C. Code Ann. § 16-3-20 (aggravating circumstance of murder of a child 11 years old or younger) (*see* App. 103). The State also had significant evidence that the petitioner's conduct toward the minor child constituted the aggravating circumstance of torture (App. 21-22). S.C. Code Ann. § 16-3-20(C)(a)(1)(h); *see State v. Smith*, 381 S.E.2d 724, 726 (S.C. 1989). Based upon the foregoing, the petitioner cannot meet his burden of proof to show there is a reasonable probability he would not have pleaded guilty and would have proceeded to trial but for his plea counsel's alleged errors.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the respondent's motion for summary judgment (doc. 15) be granted.

| | |
|---|---|
| October 22, 2010 | s/Kevin F. McDonald |
| Greenville, South Carolina | United States Magistrate Judge |